**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **Marcus Johnson** | * |
| **9120 Georgia Belle Drive** | * |
| **Perry Hall, MD 21128** | * |
| | * |
| *Plaintiff,* | * |
| | * |
| | *   **Case No.: 22-1356** |
| | * |
| **v.** | * |
| | * |
| | * |
| **Baltimore City, Maryland;** | *   **JURY TRIAL DEMANDED** |
| **Baltimore Police Department** | * |
| **242 W. 29th Street** | * |
| **Baltimore, MD 21211** | * |
| | * |
| *Defendant.* | * |
| | * |
| **Serve:** | * |
| | * |
| **The Baltimore City Law Department** | * |
| **Office of Legal Affairs** | * |
| **C/O City Hall, Room 101** | * |
| **100 N. Holliday St., Suite 101** | * |
| **Baltimore, MD 21202** | * |
| | * |
| **Baltimore Police Headquarters** | * |
| **601 East Fayette St.** | * |
| **Baltimore, MD 21202** | * |
| | * |

---

**COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES**

COMES NOW, Plaintiff, Officer Marcus Johnson (hereinafter "Plaintiff" or "Ofc. Johnson"), by and through his undersigned counsel Dionna Maria Lewis, Esq. complains against Defendant, Baltimore City Police Department (hereinafter "Defendant" or "BPD") and in support thereof states as follows:

## INTRODUCTION

1. On August 10, 2016, the Department of Justice published a scathing report about the Baltimore Police Department's widespread constitutional violations, the targeting of African Americans, and a culture of retaliation. And, while the investigation and report focused largely on how Baltimore police abused the law, the people they were meant to serve, and the public trust, the complicit institutional engine that acquiesces in the destruction and demise of BPD's own Black officers and sergeants remains pervasive, continuous, and swept under the rug. ***This case is about when the police are fearful of the police—their own brothers and sisters in blue.***

2. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. ("Title VII"); the Civil Rights Act of 1866, Section 1983(a) ("Section 1983"), 42 U.S.C. § 1320d-6 *et seq*.; and the Maryland Fair Employment Practices Act, Md. Code § 20-601 *et seq*. (FEPA) for the Defendant's unlawful harassment, discrimination, and hostile work environment based on race (African American) and sex (male) against the Plaintiff.

## JURISDICTION AND VENUE

3. This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331 as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq*., and Section 1983, to redress and enjoin employment practices of the Defendant.

4. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

2

5. Venue is appropriate because a substantial part of the actions complained of are the result of actions and employment practices of Defendant, which operates in Baltimore, Maryland.

6. Additionally, venue is proper in the District of Maryland Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendant transact substantial business in this District, and Defendant maintain employment records related to this action in the District of Maryland.

## EXHAUSTION OF REMEDIES

7. Plaintiff has exhausted all of his administrative remedies.

8. Plaintiff filed a Charge  with the Baltimore Field Office of the U.S. Equal Employment Opportunity Commission ("EEOC") on April 22, 2021, alleging discrimination based on race (African American), and sex (male).  On September 9, 2021, Plaintiff amended his EEOC Complaint alleging discrimination based on race (African American) and retaliation.

9. The Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Right-to-Sue Letter through the EEOC electronic portal, which Plaintiff received on March 8, 2022.

10. Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

## NATURE OF THE ACTION

11. Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

12. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, and denial of his constitutional and statutory rights.

13. The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

## PARTIES

14. Plaintiff, Officer Marcus Johnson, is an African American man who resides in Baltimore County, Maryland.

15. Defendant is a municipal police force, whose jurisdiction encompasses Baltimore, Maryland, the State's largest city.

16. The Baltimore Police Department ("Defendant" or "BPD") is the 8th largest municipal police force in the United States, staffed by nearly 3,100 civilian and sworn personnel. The Department's jurisdiction covers Maryland's largest city, with a population of approximately 611,648 people.

17. Ofc. Johnson works at the Baltimore Police Department ("BPD").

18. During the relevant period, Defendant employed Plaintiff, Ofc. Johnson.

19. During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections of Title VII.

## FACTUAL ALLEGATIONS

20. Plaintiff, Ofc. Marcus Johnson, has been employed by Defendant, the Baltimore Police Department ("BPD") since 2008 until present.  Plaintiff currently works as an Officer with BPD.

21. On or around August 26, 2018, Plaintiff was on duty at the time, while his wife, Wanda Johnson, was attending a bachelorette party in her honor.

22. Sometime between 10:00pm and 11:00pm, the bachelorette party proceeded to the Norma Jean's Night Club located at 10 Custom House Lane, Baltimore, MD.   Upon arrival, the group was escorted to the VIP section that they had purchased for the special occasion.

23. While enjoying themselves in the venue, two (2) younger women entered the group's reserved VIP section and sat on an unoccupied bend in the corner of the sectional sofa. Three (3) members of the entourage informed the women that they had paid for the VIP section and that they needed to leave before the bride, Ms. Johnson, returned from the restroom.  One of the women indicated that her feet hurt and that she would not leave until she was ready.  At this point, security was notified and the intruding women were escorted out of the VIP section before Ms. Johnson returned.

24. Several members of the group were shaken by the confrontation especially because one of the women who had been escorted out continued to cause a commotion outside of the section.  As a result, security proceeded to escort the two women out of the club completely.

25. At this time Plaintiff, who was on patrol at the time,  was notified by a friend who was attending the bachelorette party about what had ensued.  Plaintiff then contacted his supervisor to request permission to enter the venue and escort his fiancée to safety.

26. Plaintiff's supervisor approved his request and Plaintiff entered the venue, located his fiancée, and escorted her to safety.

27. At the same time outside of the club further commotion began when Dominique Wiggins, an off-duty police officer and member of the bachelorette party, observed another BPD

police officer, who was later identified as Sgt. Marlon Koushall[1] exit a marked patrol vehicle and walk over to her and Ms. Henrietta Middleton, a fellow off-duty BPD Police Detective (Black, woman).  Sgt. Koushall appeared to say something that Det. Wiggins seemed unable to hear and out of nowhere, struck Ms. Middleton in the face causing her to stumble away from where they were standing.[2]

28. Det. Wiggins immediately began to yell "Stop! What are you doing?" while running to aid Ms. Middleton.  Other police officers who were in the vicinity attempted to stop Det. Wiggins from rendering aid to Ms. Middleton, so she began to yell that they were police officers and Ms. Middleton was a Sergeant.

29. At this point, Ms. Middleton was placed against the patrol vehicle and Sgt. Koushall grabbed Ms. Middleton's wrist and stated that she was under arrest.  As Sgt. Koushall was attempting to place Ms. Middleton in handcuffs, Sgt. A. Davis approached the scene and Det. Wiggins explained to Sgt. Davis what had occurred.  Sgt. Davis stated that he would remove Ms. Middleton from the scene considering the commotion it was causing.

30. After the incident, Sgt. Raymond Lloyd of the Internal Affairs (IA) Division was assigned to interview all of the officers who were at Norma Jean's, including Plaintiff.

31. Plaintiff complied with each of IA's inquiries and requests. Additionally, Mr. Johnson made himself available to the investigating detectives throughout their entire evaluation of the events of that evening. At no point did Plaintiff provide false, misleading, or fabricated statements in order to elude punishment or protect the interests of his wife, Wanda Johnson.

---

[1] Based on reason and belief, Sgt. Koushall has been recorded in a viral video brutalizing a Black woman civilian in Baltimore City: https://www.wbaltv.com/article/social-media-video-baltimore-police-officer-hits-woman-in-face/32718455# (May 30, 2020); https://www.baltimoresun.com/news/crime/bs-md-ci-cr-officer-assault-20200602-gxwdnzlwuzdtxmqt4gpy3eugmq-story.html (June 2, 2020)
[2] New articles referencing the incident that this Complaint arises out of:
https://pinacnews.com/index.php/2019/10/08/baltimore-cop-convicted-for-attacking-fellow-cop-facing-10-years-in-prison/

32. However, due to the conduct of Sgt. Koushall and BPD's attempts to shield him from accountability of his violent actions, instead of attempting to work with Plaintiff, the Internal Affairs Detectives chose to fabricate allegations against Plaintiff regarding his role in the incident, and imputed a motive for him to fabricate statements that he made to IA, in an effort to mask his wife's alleged culpability in the incident.

33. In or around February 2019, Sgt. Koushall was formally charged with assault on Ms. Middleton.  As a result, Plaintiff was requested and directed to assist the prosecution in the trial of Sergeant Koushall, to which he did without hesitation, by providing truthful testimony about the events of that evening. However, once Plaintiff's assistance ended, Internal Affairs then directed their focus to the events that preceded the incident outside Norma Jean's Night Club in order to find evidence of misconduct to be charged against Plaintiff.

34. In or around September 2019, court proceedings were held against Sgt. Koushall, during which Plaintiff testified for the State and Sgt. Koushall was found guilty of assault in October 2019.

35. In or around November 2019, Sgt. Koushall filed an appeal of his guilty verdict.

36. At no point were any declination letters issued to Plaintiff regarding his alleged conduct nor was there any indication that he was ever suspected of criminal activity.

37. Then, on or about May 27, 2020, seemingly out of nowhere, a Notice of Order to Appear was issued to Plaintiff to give a phone statement on June 4, 2020 in reference to the investigation about the "club incident" that occurred almost two years prior.

38. On or about June 11, 2020, Plaintiff received a notice of Internal Investigation alleging that on August 26, 2018, Plaintiff had neglected his duty and made a false statement.  It was

alleged that Plaintiff had abandoned his assignment; that he entered a bar while on duty for reasons unrelated to the performance of his duties; that he failed to activate his body worn camera; and that he lied in his statement on June 4, 2020.  Plaintiff was told that this investigation concerned what had occurred *inside* the club and not what took place between Sgt. Koushall and Ms. Middleton.

39. As a result of the IA charge, Plaintiff was suspended pending termination based on the findings of Det. Gertz, the IA investigator, that Plaintiff gave false statements in his interview on June 4, 2020, in reference to the events that occurred at Norma Jean's.

40. Plaintiff was shocked by the allegation and punishment considering he had no indication that his statement on June 4, 2020 and his prior cooperation on August 26, 2018, would be used against him in any way.  Given BPD's culture of retaliation, Plaintiff believed that this was in retaliation for his testimony against Sgt. Koushall.

41. BPD's targeting of Plaintiff became abundantly clear and was seemingly specifically linked to his involvement in the case against Sgt. Koushall and his status as an African American who had engaged in statutorily protected activity.

42. Plaintiff maintained that any interpreted inconsistencies in his statement on June 4, 2020 were easily explained by the information that Plaintiff was able to clarify and learn over the course of the almost two years that had passed since the August 26, 2018 night of the incident in question.

43. Plaintiff was shocked that he was immediately moved towards termination when based on reason and belief, he was aware of other cases where White male and female officers and supervisors who had been suspected of misconduct or other severe offenses, were not

subjected to the same level of penalty or adverse action.   Based on reason and belief, examples of comparators and comparative scenarios include:

    a.  Major James Handley (White/male) called a BPD applicant a "fucking n*gger" in the workplace, which was overheard by other BPD officers. Although the personnel case against him was sustained, he was given the opportunity to retire from the Department without reprimand and seemingly any adverse personnel impact.

    b.  Lt. William Colburn (White/male) had several sustained DUI cases as well as a fleeing and eluding police charge. He was ultimately suspended then reinstated with minimal punishment and allowed to keep his rank. Lt. Colburn has since retired from the Department.

    c.  Officer Jason Zimmerman (White/male) was charged with 'use of force' for punching a male in the face several times who was suffering from a behavioral crisis. Ofc. Zimmerman received no suspension, and instead he received a severe letter of reprimand and a loss of 5 days of leave. Sometime later, Ofc. Zimmerman was suspended awaiting a declination letter for a police officer involved shooting.

    d.  Sgt. Amy Street (White/female) was involved in a domestic related assault with her husband, Sgt. Craig Street. Both officers were suspended, however the trial board hearing was dismissed, and charges were dropped due to what was referred to as an "improper investigation" by the investigating detective.

44. Arguably, these cited incidents of other officer misconduct were more severe and egregious than the accusation against Plaintiff that he provided inconsistent and/or false statements on June 4, 2020.

45. On November 9, 2020, the Circuit Court for Baltimore City found in favor of Plaintiff and ordered that no disciplinary charges should be pursued against him.

46. Defendant appealed the Circuit Court's Decision and on October 18, 2021, the Maryland Court of Special Appeals held that the charges brought against Plaintiff were barred because more than one year had elapsed between the alleged misconduct and charges, and that the record did not sustain any suspicion of criminal behavior to toll the statute of limitations.

47. The misinterpretations and mischaracterizations by agents of BPD regarding Plaintiff's statements, which have been used as a basis to substantiate the severe punishment that had been issued to him, is an unequivocal demonstration of discriminatory and disproportionate treatment of him as an African American male, particularly when comparing his treatment and punishment to his similarly situated non-African American and non-African American male colleagues.  IA had no former interactions with Plaintiff that could possibly explain this malicious motive other than BPD's known culture of disproportionately punishing Black officers, like Plaintiff, because of his protected characteristics, as well as his statutorily-protected activity and cooperation in the prosecution of Sgt. Koushall.

48. Plaintiff continues to work in a hostile work environment where he fears discrimination and retaliation at the hands of Defendant.

49. The Defendant's discriminatory practices have been effectuated in violation of federal and state statutes, including Title VII of the Civil Rights Act, Section 1983, and FEPA.

## COUNT I

### VIOLATION OF TITLE VII - RACE DISCRIMINATION

50. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

51. A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

52. Here, the four (4) elements of a *prima facie* case of race discrimination are met. The Plaintiff is African American and is considered a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff is a qualified police officer, as he has approximately fourteen (14) years on the force and has had no serious disciplinary issues of record prior to the allegations at issue. Additionally, Plaintiff suffered an adverse employment action directly related to his membership in a protected class pursuant to Title VII, when IA investigators made false allegations against him that ultimately resulted in seemingly unwarranted and disparate charges, despite his cooperation with the investigation process. Finally, the penalty that was lodged against Plaintiff was disproportionate in comparison to his actual involvement in the incident, particularly when compared to the known penalties and repercussions that similarly situated colleagues outside of his protected class experienced for seemingly more egregious offenses.

53. The work environment and adverse action that Plaintiff was subjected to materially affected the terms, privileges, and conditions of his employment.

54. Defendant knew that Plaintiff was African American prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his race.

55. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race.

56. Defendant treated Plaintiff in a way that deprived him of workplace safety and otherwise adversely affected his status as an employee because of his race.

57. Similarly situated non-Hispanic White employees have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and his workplace conditions.

58. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

59. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

60. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

61. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his race.

62. Defendant discriminated against Plaintiff because of his race by engaging in, tolerating, or failing to prevent race discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

63. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

64. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

65. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

66. Further, Defendant's treatment and actions are ongoing.

67. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

68. Similarly situated non-Hispanic White employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

69. By law, Baltimore City Police Department must comply with Title VII, but through their conduct have violated Title VII.

## COUNT II

## VIOLATION OF TITLE VII - SEX DISCRIMINATION

70. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

71. A *prima facie* case of sex discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

72. Here, the four (4) elements of a *prima facie* case of sex discrimination are met. The Plaintiff is male and is considered a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff is a qualified police officer, as he has approximately fourteen (14) years on the force and has had no serious disciplinary issues of record prior to the allegations at issue. Additionally, Plaintiff suffered an adverse employment action directly related to his membership in a protected class pursuant to Title VII, when IA investigators made false allegations against him that ultimately resulted in seemingly unwarranted and disparate charges, despite his cooperation with the investigation process. Finally, the penalty that was lodged against Plaintiff was disproportionate in comparison to his actual involvement in the incident, particularly when compared to the known penalties and repercussions that similarly situated colleagues outside of his protected class experienced for seemingly more egregious offenses.

73. The work environment and adverse action that Plaintiff was subjected to materially affected the terms, privileges, and conditions of his employment.

74. Defendant knew that Plaintiff was male prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his sex.

75. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his sex.

76. Defendant treated Plaintiff in a way that deprived him of workplace safety and otherwise adversely affected his status as an employee because of his sex.

77. Similarly situated female employees have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and his workplace conditions.

78. Plaintiff's sex was a determining factor in Defendant's unlawful conduct toward Plaintiff.

79. Plaintiff's sex was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

80. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

81. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his sex.

82. Defendant discriminated against Plaintiff because of his sex by engaging in, tolerating, or failing to prevent sex discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

83. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

84. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

85. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

86. Further, Defendant's treatment and actions are ongoing.

87. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

88. Similarly situated female employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

89. By law, Baltimore City Police Department must comply with Title VII, but through their conduct have violated Title VII.

## COUNT III

**SECTION 1983 CLAIM FOR VIOLATION OF PLAINTIFF'S CIVIL RIGHTS UNDER SECTION 1981 OF THE CIVIL RIGHTS ACT**

90. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

91. Plaintiff brings a claim of race discrimination against Defendant and its named Responsible Management Officials, for its violations of 42 U.S.C. §1981 through 42 U.S.C. §1983 for the deprivation of his property and liberty interests as protected by the 14th Amendment to the U.S. Constitution and these federal statutes.

92. Section 1983 provides an individual the right to sue state government employees and others acting "under color of state law" for civil rights violations.

93. The Defendant, and its responsible management officials, under 42 U.S.C. § 1983 are persons who acted "under the color of state law."

94. Defendant, BPD, unlawfully deprived Plaintiff of his due process rights in violation of Section 1981 of the Civil Rights Act.

95. Defendant treated Plaintiff disparately or pretextually in the terms and conditions of his employment compared with the way non-black employees, or employees that had not engaged in protected activity, were treated.

96. Plaintiff alleges that as a result of him being African American or because he engaged in protected activities, he was illegally harassed, subjected to a pattern of harassment and disparate treatment, and knowingly subjected to unjustified and factually unsupported disciplinary actions.

97. The acts described above are part of an institutional practice or custom, constituting an official policy of the Baltimore Police Department to cover up officer misconduct, discrimination, and retaliation against fellow officers who stand up against the Department for violations of their civil rights that should protect them from discrimination and retaliation in the workplace.

98. At all times relevant hereto, Defendant acted pursuant to a custom or policy of the Baltimore Police Department.

99. Defendant failed to adopt clear policies and failed to properly train its management officials in handling, managing, and protecting employees who engage in statutorily-protected activities within the Police Department.

100.    As an African American, Plaintiff is a member of a protected class.

101.    Because of his race (African American), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Section 1983.

102.    Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiffs employment.

103.    Defendant knew that Plaintiff is an African American prior to the adverse actions described throughout the Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected to because of his race that he was subjected to.

104.     Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race (African American).

105.     Defendant has limited, segregated, and classified Plaintiff in a way that deprived him of employment opportunities and otherwise adversely affected his status as an employee, because of his race (African American).

106.     Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably than the Plaintiff in the terms and conditions of employment.

107.     Plaintiff consistently attempted to report the pervasive culture and custom within BPD of treating African American officers differently than White officers when it came to promotions, disciplinary actions, and conduct.

**108.**     Plaintiff's allegations clearly show a custom of discrimination as required by Section 1983.

109.     Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

110.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

111.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (African American).

## COUNT III

**VIOLATION OF THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT (FEPA)**

112.     Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

113.     The Maryland Fair Employment Practices Act (FEPA), Md. Code Ann., State Gov't, § 20-601 *et seq*. outlaws discrimination in employment based on race, color, religion, sex, age, national origin, marital status, sexual orientation, gender identity, genetic information, or disability by employers with more than 15 employees.

114.     Under FEPA, an employer can be held legally responsible if the person responsible for the harassment can make or recommend employment decisions (e.g., hiring and firing, promotion and demotion, and reassignments) or directs, supervises, or evaluates the work activities of the employee, even if that person does not have the power to make employment decisions.   Additionally, an employer can be liable if its own negligence leads to harassment or enables harassment to continue.

115.     Harassment is unwelcome or offensive conduct that is based on "race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, gender identity, or disability."

116.     Here, the Plaintiff was subjected to harassment or offensive conduct that is based on race, when the investigators continued to make false allegations against him that ultimately resulted in seemingly unwarranted and disparate charges, despite his cooperation with the investigation process. Finally, the penalty that was lodged against Plaintiff was disproportionate in comparison to his actual involvement in the incident, particularly when compared to the known penalties and repercussions that similarly

situated colleagues outside of his protected class experienced for seemingly more egregious offenses.

117.    The above-mentioned actions by the Defendants towards the Plaintiff demonstrates the discriminatory and prejudicial manner in which the Defendants treated the Plaintiff and his lawful claims against them.

118.    The Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (African American).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Officer Marcus Johnson, respectfully prays that this Court grant her the following relief:

a.  Enter a declaratory judgement finding that the foregoing actions of Defendant violated Title VII, Section 1983, and FEPA;

b.  Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c.  Award back pay and compensatory damages in the amount of $1,000,000 (one-million dollars and zero cents) that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost wages, lost job benefits; physical and psychological injury, humiliation, embarrassment; and mental and emotional distress caused by the conduct of the Defendant alleged herein;

d.  Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e.  Order such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable herein.


Dated: June 4, 2022


Respectfully submitted,

_____
Dionna Maria Lewis, Esq.
District Legal Group, PLLC
Bar No. 19486
700 Pennsylvania Ave, SE, Suite 2098
Washington, D.C. 20003
Phone: (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff Marcus Johnson*