**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MARCUS JOHNSON,                           *

Plaintiff,                                *

v.                                        *            Civil Action  MJM-22-1356

BALTIMORE POLICE DEPARTMENT,              *

Defendant.                                *
                          * * * * * * * * * * * *

**<u>MEMORANDUM OPINION</u>**

Marcus Johnson ("Plaintiff") commenced this civil action against his employer Baltimore Police Department ("Defendant" or "BPD") alleging violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); 42 U.S.C. § 1983; and the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't, § 20-601, *et seq.* ("MFEPA").[1] The Complaint contains four counts:

    (1)       Count I: Violation of Title VII – Race Discrimination;

    (2)       Count II: Violation of Title VII – Sex Discrimination;

    (3)       Count III: Section 1983 claim for violation of Pl's civil rights under Section 1981 of the Civil Rights Act (Count III); and

    (4)       Count IV: Violation of the Maryland Fair Employment Practices Act (MFEPA).

Currently pending is Defendant's Motion to Dismiss Plaintiff's Complaint. (ECF 8). Plaintiff filed a memorandum in opposition to the motion (ECF 10), and Defendant filed a reply memorandum (ECF 11). The Court has reviewed the filings and finds that no hearing is necessary.

---

[1] The parties have consented to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF 15).

L.R. 105.6. For the reasons stated below, Defendant's motion will be granted, and Plaintiff's claims will be dismissed without prejudice.

## I.  **Background**[2]

Plaintiff, an African American male police officer, has been employed by BPD since 2008. (Compl. ¶ 20). On or about August 26, 2018, Plaintiff was on duty "while his wife [then-fiancée] was attending a bachelorette party in her honor." (Compl. ¶ 21). Sometime between 10:00 and 11:00 p.m., "the bachelorette party proceeded to the Norma Jean's Night Club" in downtown Baltimore, Maryland. (Compl. ¶ 22). "[T]he group was escorted to the VIP section that they had purchased for the special occasion." (*Id.*)  Two younger women subsequently entered the group's VIP section without invitation. (Compl. ¶ 23). Security was notified, and the women were escorted out of the VIP section. (*Id.*)  One of the women who had been escorted out continued to cause a commotion outside of the VIP section, and as a result, security escorted the two women who had intruded into the VIP section out of the club. (Compl. ¶ 24). Plaintiff, who was on patrol at the time, was notified by a friend who was attending the bachelorette party about what had ensued. (Compl. ¶ 25). Plaintiff alleges that he sought and received supervisory approval before entering the club and escorting his fiancée to safety. (Compl. ¶¶ 25, 26).

At the same time, Dominique Wiggins, an off-duty police officer and member of the bachelorette party; Henrietta Middleton, an off-duty BPD detective; and Sgt. Marlon Koushall,

---

[2] The facts described herein are primarily drawn from allegations in Plaintiff's Complaint and are accepted as true solely for purposes of resolving Defendant's motion. When resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts are generally limited to considering the allegations set forth in the complaint and documents that are either attached to the complaint or "explicitly incorporated into the complaint by reference[.]" *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *see also* Fed. R. Civ. P. 10(c).

another BPD officer were involved in an incident that took place outside of the club, during which Koushall struck Middleton in the face.[3] (Compl. ¶ 27).

Sgt. Raymond Lloyd of BPD's Internal Affairs ("IA") Division was assigned to interview all of the officers who were at the night club, including Plaintiff. (Compl. ¶ 30). According to the Complaint, "Plaintiff complied with each of IA's inquiries and requests," and "at no point did he provide false, misleading, or fabricated statements in order to elude punishment or protect the interests of his wife." (Compl. ¶ 31). Plaintiff alleges that "due to the conduct of Sgt. Koushall and BPD's attempts to shield him from accountability of his violent actions," the IA detectives "fabricated allegations against [him] regarding his role in the incident, and imputed a motive for him to fabricate statements that he made to IA, in an effort to mask his wife's alleged culpability in the incident." (Compl. ¶ 32).

In or around February 2019, Koushall was charged with assault on Middleton. (Compl. ¶ 33). The Complaint states that Plaintiff testified as a witness for the prosecution at Koushall's trial in September 2019, (Compl. ¶ 34); however, Plaintiff states in his opposition brief that "it was in fact his wife . . . who testified against Sgt. Koushall," (Pl.'s Opp'n at 12). Koushall was found guilty of assault in October 2019. (Compl. ¶ 34). In or around November 2019, Koushall filed an appeal of his guilty verdict. (Compl. ¶ 35).

On May 27, 2020, Plaintiff was ordered to "give a phone statement on June 4, 2020, in reference to the investigation about the 'club incident' that occurred almost two years prior." (Compl. ¶ 37). "On June 11, 2020, Plaintiff received a notice of Internal Investigation alleging that on August 26, 2018, Plaintiff had neglected his duty and made a false statement." (Compl. ¶ 38).

---

[3] Middleton and Wiggins have filed their own civil suits relating to this incident against BPD. *See Middleton v. Koushall, et al.*, Case No. 1:20-cv-03536 (Dec. 7, 2020); *Wiggins v. Balt. Police Dep't*, Case No. 1:22-cv-01089 (May 4, 2022).

3

"It was alleged that Plaintiff abandoned his assignment; that he entered a bar while on duty for reasons unrelated to the performance of his duties; that he failed to activate his body worn camera; and that he lied in his statement on June 4, 2020." (*Id.*) "As a result of the IA charge, Plaintiff was suspended pending termination based on the findings of Det. Gertz, the IA investigator, that Plaintiff gave false statements in his interview on June 4, 2020, in reference to the events that occurred at Norma Jean's." (Compl. at ¶ 39).

Plaintiff "had no indication that his statement on June 4, 2020 and his prior cooperation on August 26, 2018 would be used against him" and believed that the IA investigation and its findings were made "in retaliation for his testimony" against Koushall."[4] (Compl. ¶ 40). Plaintiff alleges that BPD's targeting of him was "specifically linked to his involvement in the case against Sgt. Koushall and his status as an African American who had engaged in statutorily protected activity." (Compl. ¶ 41). While acknowledging there were "inconsistencies in his statement on June 4, 2020[,]" Plaintiff contends that these inconsistencies were "easily explained" by Plaintiff's clarification and having "learn[ed] additional information" about that the events of August 26, 2018, in "the almost two years that had passed since . . . the incident in question." (Compl. ¶ 42).

Plaintiff alleges that while he was "immediately moved towards termination[,]" white male and female officers and supervisors "suspected of misconduct or other severe offenses were not subjected to the same level of penalty or adverse action." (Compl. ¶ 43). Plaintiff names four putative comparators, describing each individual by their race, their sex or gender, their alleged misconduct or charges, and any discipline they received. (*Id.*)

---

[4] As previously indicated, the reference to *Plaintiff's* testimony appears to be an error in the Complaint. Plaintiff now states that it was *his wife* who testified in the proceeding against Koushall. (Pl.'s Opp'n at 12).

4

On November 9, 2020, the Circuit Court for Baltimore City found in favor of Plaintiff and ordered that no disciplinary charges should be pursued against him.[5] (Compl. ¶ 45). BPD appealed the Circuit Court's Decision, and on October 18, 2021, the Maryland Court of Special Appeals held that the charges brought against Plaintiff were time-barred. (Compl. ¶ 46).

Plaintiff alleges that "misinterpretations and mischaracterizations" of his statements have been used by Defendant to substantiate "the severe punishment that has been issued to him[]" and demonstrates "discriminatory and disproportionate treatment. . . ." (Compl. ¶ 47). Plaintiff attributes his "punishment" to "BPD's known culture of disproportionately punishing Black officers," noting that Gertz "had no former interactions with Plaintiff that could possibly explain" BPD's "malicious" treatment of him. (*Id.*) Plaintiff further alleges that he "continues to work in a hostile work environment where he fears discrimination and retaliation at the hands of Defendant." (Compl. ¶ 48).

Plaintiff filed a charge with the Baltimore Field Office of the U.S. Equal Employment Opportunity Commission ("EEOC") on April 22, 2021, alleging discrimination based on race and sex. (Compl. ¶ 8). On September 9, 2021, Plaintiff amended his EEOC complaint alleging

---

[5] Defendants explain:

> Johnson filed a petition for show cause in Baltimore City Circuit Court on July 21, 2020, asking the court to enjoin BPD from pursuing the disciplinary charges against him. *See Harrison v. Johnson*, No. 1209, Sept. term, 2020, 2021 WL 4841134, at *4 (Md. Ct. Spec. App. Oct. 18, 2021). The Circuit Court granted Johnson's show cause, finding that "BPD failed to comply with LEOBR [Law Enforcement Officers' Bill of Rights] because it brought disciplinary charges more than one year from that date." *Id.* at *5. BPD appealed on October 18, 2021. Compl. at ¶ 45. The Maryland Court of Special Appeals affirmed in part and reversed in part, holding that, while the charges directly arising from Johnson's behavior at Norma Jean's on August 26, 2018, were time-barred, Johnson's false statement charges that resulted from his June 4, 2020 interview were not. *See Harrison*[,] 2021 WL 4841134, at *2, *5-7.

(Def. Mem. at 3).

discrimination based on race and retaliation. (*Id*.) He received his right-to-sue letter on March 8, 2022. (Compl. ¶ 9). This action was filed on June 4, 2022. (ECF 1).

## II.      **Legal Standard**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss*., 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal quotation

marks, brackets, and citation omitted). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level[,]" *id.*, and "tender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

The purpose of a Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."[6] *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). Thus, when considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* at 212. At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## III.     Analysis

### A.  Title VII Discrimination Claims: Count I (Race) & Count II (Sex)

Title VII provides a cause of action against employers for discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment,

---

[6] In the relatively rare circumstances where all facts necessary to an affirmative defense clearly appear on the face of the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (*en banc*) (internal citations omitted).

because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). This proscription is "often referred to as the 'disparate treatment' (or 'intentional discrimination') provision. . . ." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc*., 575 U.S. 768, 771 (2015).

"[T]he elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012) (citation omitted). A plaintiff is not required to plead a *prima facie* case to state a claim of unlawful discrimination under Title VII that survives a motion to dismiss. *McCleary-Evans v. Md. Dep't of Transp*., 780 F.3d 582, 584–85 (4th Cir. 2015). Even still, "a Title VII complaint is . . . subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal*." *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 747-48 (4th Cir. 2017). Therefore, a plaintiff must allege sufficient facts "to satisfy the elements of a cause of action created by [Title VII]." *McCleary-Evans*, 780 F.3d at 585 (internal quotation marks omitted). In a Title VII discrimination case, a plaintiff must plausibly allege discriminatory conduct on account of a protected status, such as race or sex. *See Felder v. MGM Nat'l Harbor, LLC*, No. 20-2373, 2022 WL 2871905, at *1 (4th Cir. July 21, 2022) (citation omitted). Although pleading all elements of a *prima facie* case is not strictly required, reference to the elements of a *prima facie* case may inform a court's assessment of a motion to dismiss a Title VII claim. *Yampierre v. Baltimore Police Dep't*, Civ. No. ELH-21-1209, 2022 WL 3577268, at *16 (D. Md. Aug. 18, 2022) (citations omitted).

Defendant argues that "Plaintiff's Title VII claims are barred because he failed to exhaust his administrative remedies[]" and that Plaintiff fails to plead two elements of a *prima facie* claim of discrimination—adverse employment action and different treatment from similarly situated employees. (Def. Mem. at 6–8). The Court agrees that the Title VII claims are time barred and finds that the allegations in the Complaint fail to support any reasonable inference of either race or sex discrimination under Title VII.[7]

### 1.   Exhaustion of Administrative Remedies

A plaintiff must first exhaust his administrative remedies before asserting a Title VII claim in federal court. *See Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1846 (2019). To satisfy this requirement, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days "after the alleged unlawful employment practice occur[s]." 42 U.S.C. § 2000e–5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). But, because Maryland is a deferral state, a claim must be filed no more than 300 days after the alleged unlawful employment practice. *See Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008).

Upon receiving a charge, the EEOC must notify the employer and investigate the allegations. 42 U.S.C. § 2000e–5(b). If the EEOC finds "reasonable cause" to believe the charge is true, the EEOC must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* If the EEOC cannot achieve a voluntary settlement, it may "bring a civil action" against the employer in court. *Id.* § 2000e–5(f)(1). On the other hand, where the EEOC concludes that there is "n[o] reasonable cause to

---

[7] As to the first two prongs of the *prima facie* case, the Court notes Plaintiff's allegations that (1) he is an African American man; and (2) he "is a qualified police officer, as he has approximately fourteen (14) years on the force and has had no serious disciplinary issues of record prior to the allegations at issue." (Compl. ¶¶ 52, 72).

believe that the charge is true," Title VII directs the EEOC to dismiss the charge and notify the complainant of his right to sue in court. *Id.* § 2000e–5(b), f(1). This notice is commonly called a "right-to-sue letter." *See, e.g.*, *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006). A complainant has 90 days to file suit in federal or state court after being notified of the right to sue. *Id.* § 2000e–5f(1).

A plaintiff's failure to exhaust administrative remedies does not divest the court of jurisdiction. *Davis*, 139 S. Ct. at 1846. Rather, exhaustion is a "claim-processing rule," and it is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'" *Id.* (quoting *Eberhart v. United States*, 546 U.S. 12, 19, (2005) (per curiam)) (cleaned up). Although a defendant may waive arguments related to administrative exhaustion, if asserted in a timely fashion such objections may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg., Inc.*, Civ. No. RBD-18-3344, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing the import of *Davis*).

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Administrative exhaustion advances the complementary goals "of protecting agency authority in the administrative process and promoting efficiency in the resolution of claims." *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019) (internal quotation marks and alterations omitted); *see also Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406-07 (4th Cir. 2013). In particular, the exhaustion requirement "ensures that the employer is 'put on notice of the alleged violations' to facilitate out-of-court resolution[.]" *Stewart*, 912 F.3d at 699 (quoting *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005)).

"Moreover, Title VII's administrative exhaustion process has substantive effect. Generally, it limits the scope of a plaintiff's federal lawsuit to those parties and claims named in the administrative charge." *Ensor v. Jenkins*, Civ. No. ELH-20-1266, 2021 WL 1139760, at *26 (D. Md. Mar. 25, 2021) (citing 42 U.S.C. § 2000e–5(f)(1); *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012); *Causey v. Blog*, 162 F.3d 795, 800 (4th Cir. 1998); *Techs. Applications & Serv. Co.*, 80 F.3d at 963). However, EEOC charges are to be construed liberally. *Chacko*, 429 F.3d at 509; *see Sydnor*, 681 F.3d at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs."). "Federal courts may hear claims not presented to the EEOC so long as they are 'reasonably related' to the plaintiff's EEOC charge 'and can be expected to follow from a reasonable administrative investigation. . . .'" *Ensor*, 2021 WL 1139760, at *26 (quoting *Sydnor*, 681 F.3d at 594).

Regarding Title VII claims for discrete discriminatory and retaliatory acts, the Supreme Court has stated that a party "must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). The Court explained that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. Notably, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114.

However, unlike claims for discrete acts of discrimination, claims of hostile work environment occur "over a series of days or perhaps years . . ." and "a single act of harassment may not be actionable on its own." *Id.* Accordingly, "the continuing violation doctrine applies to

a hostile work environment claim." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 209 (4th Cir. 2019) (citing *Morgan*, 536 U.S. at 116–17, and *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 223 n.5 (4th Cir. 2016)). If "an act contributing to [a hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability[.]" *Id*. at 117. "[T]he employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." *Id.* at 118. "[E]ven if most of the harassing conduct on which a plaintiff relies to establish her hostile work environment claim occurred outside the statutory period, the claim will be considered timely if at least one act continuing the violation occurred within the statutory period." *Guessous*, 828 F.3d at 222.

Here, Plaintiff's Title VII claims are based on an internal investigation of his conduct and departmental changes made against him in June 2020. The Complaint states that Plaintiff received a notice of internal investigation on June 11, 2020, alleging that he had "neglected his duty and made a false statement." (Compl. ¶ 38). In his original Charge of Discrimination with EEOC, Plaintiff alleged that he "was summarily and wrongly charged with neglect of duty and filing a false statement in relation to an incident that occurred on August 26, 2018." (ECF 8-3 at 1). The amended Charge of Discrimination Plaintiff filed with EEOC alleges specifically that he "was departmentally charged with neglect of duty and making a false statement and was suspended pending termination[]" on "June 15, 2020[.]" (ECF 8-4 at 1).  Plaintiff's original charge was not filed with EEOC until April 22, 2021—316 days and 311 days after the acts of alleged discrimination in June 2020. (ECF 8-3 at 1). Because they are time barred, Plaintiff cannot recover for any claims of discrimination, retaliation, or hostile work environment under Title VII, based

on either the internal investigation or departmental charges.[8] Counts I and II of the Complaint are subject to dismissal.

### 2. Adverse Employment Action

Defendants also argue that Counts I and II should be dismissed because Plaintiff fails to allege any adverse employment action under Title VII. "An adverse [employment] action is one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). "Although conduct short of ultimate employment decisions can constitute adverse employment action, there still must be a tangible effect on the terms and conditions of employment." *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012) (quoting *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 737 n. 6 (D. Md. 2009)). "[C]ourts have found that a claim for 'disparate investigation' is insufficient to state a claim for discrimination under Title VII where the plaintiff failed to allege also 'that the investigation resulted in some form of employment injury. . . .'" *Yampierre*, 2022 WL 3577268, at *26 (citing *Jenkins v. Balt. City Fire Dep't*, 862 F. Supp. 2d 427, 446 (D. Md. 2012), *aff'd*, 419 F. App'x 192 (4th Cir. 2013) (per curiam)).

Placing an employee on paid leave is generally considered not to be an adverse employment action. *See, e.g.*, *Nzabandora v. Rectors & Visitors of Univ. of Va.*, 749 F. App'x 173, 175 (4th Cir. 2018) ("[Plaintiff's] placement on paid leave pending investigations into her alleged misconduct also does not constitute adverse employment action for purposes of Title VII."); *Mason v. Montgomery Cnty. Police Dep't*, No. 8:13-cv-01077-AW, 2013 WL 6585928, at *5 (D.

---

[8] The Complaint alleges that "Plaintiff was suspended pending termination based on the findings" from the internal investigation, (ECF ¶ 39), but the date and duration of the suspension are not specified.

Md. Dec. 13, 2013) ("[P]lacing an employee on paid administrative leave with full benefits is typically not considered a materially adverse action.") (collecting cases). In contrast, placing an employee on leave without pay could be an adverse action. *See, e.g.*, *Snyder v. Azar*, Civ. No. TDC-18-0511, 2020 WL 4605223, at *6 (D. Md. Aug. 10, 2020), *aff'd sub nom*. *Snyder v. Becerra*, No. 20-2073, 2021 WL 5505403 (4th Cir. Nov. 24, 2021) (finding that the suspension of Plaintiff for five days without pay qualifies as an adverse employment action because it had a "significant detrimental effect" by causing a "decrease in compensation").

None of the employer actions alleged in the Complaint constitutes an adverse employment action sufficient to state a plausible claim of discrimination under Title VII. Plaintiff alleges that he was subject to internal investigation in 2020 alleging that he neglected his duty and made a false statement on August 26, 2018. (Compl. ¶ 38). Without any injury to Plaintiff's employment status, the internal investigation is not an adverse employment action. *See Jenkins*, 862 F. Supp. 2d at 446; *Yampierre*, 2022 WL 3577268, at *26. The investigation led to "sustained findings for alleged misconduct and false statements" and "[a]s a result," a suspension of Plaintiff "pending termination." (Compl. ¶ 53; Def. Mem. at 7; Pl. Opp'n 4–5). However, the Complaint does not include any details as to the terms of Plaintiff's suspension, such as whether he was suspended without pay or whether the suspension had any significant, tangible effect on the terms and conditions of employment. *See Nzabandora*, 749 F. App'x at 175; *Thorn*, 766 F. Supp. 2d at 598. And the Complaint does not otherwise allege facts to suggest that the internal investigation and suspension "*pending* termination" resulted in any *actual* change in benefits or had any significant impact on Plaintiff's employment status, such as *actual* termination. *See Hoyle*, 650 F.3d at 337.

Plaintiff alleges that "IA investigators made false allegations against him that ultimately resulted in seemingly unwarranted and disparate charges, despite his cooperation with the

investigation process," and "the penalty that was lodged against Plaintiff was disproportionate in comparison to his actual involvement in the incident." (Compl. ¶¶ 52, 72). None of this conduct on its face constitutes "a significant change in employment status, . . . or a decision causing a significant change in benefits[,]'" *Hoyle*, 650 F.3d at 337, and the Complaint does not allege that any of this conduct had "a tangible effect on the terms and conditions of [Plaintiff's] employment[,]" *Thorn*, 766 F. Supp. 2d at 598. Notwithstanding Plaintiff's conclusory description of his experiences at BPD as "severe punishment," (Compl. ¶ ), Plaintiff fails to plead that he suffered an adverse employment action by Defendant that could sustain any claim of unlawful race or sex discrimination under Title VII.

### 3.   Inference of Unlawful Discrimination

In the absence of direct or circumstantial evidence, a plaintiff alleging race or sex discrimination in employment may make a *prima facie* showing that he suffered an adverse employment action "under circumstances giving rise to an inference of unlawful discrimination." *Swaso*, 698 Fed. App'x at 747 (quoting *Adams v. Tr. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011)). This element "is met if 'similarly-situated employees outside the protected class received more favorable treatment.'" *Id.* (quoting *White v. BFI Waste Services*, 375 F.3d 288, 295 (4th Cir. 2004)). When a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, "[t]he similarity between comparators . . . must be clearly established in order to be meaningful." *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood v. Locke*, 387 F.

15

App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). In essence, "the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Swaso*, 698 Fed. App'x at 748 (quoting *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011)).

Scrutiny of comparator evidence typically does not occur at the Rule 12(b)(6) stage of litigation. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022) (citations omitted). Nevertheless, a plaintiff who relies on comparators to plead a plausible claim of employment discrimination "must identify the proposed comparator and 'establish a plausible basis for believing [the plaintiff and proposed comparator were] actually similarly situated.'" *Asi v. Info. Mgmt. Group, Inc.*, Civ. No. GLR-18-3161, 2019 WL 4392537, at *6 (D. Md. Sept. 13, 2019) (quoting *Coleman*, 626 F.3d at 191).

Here, the Complaint makes reference to several comparators in an effort to support an inference that Defendant unlawfully discriminated against Plaintiff. Plaintiff alleges that an internal investigation was undertaken against him in August 2018, "alleging that . . . [he] had neglected his duty and made a false statement," and "[a]s a result of the IA charge, [he] was suspended pending termination." (Compl. ¶ 38). Plaintiff further alleges that he was "immediately moved towards termination" while "White male and female officers and supervisors who had been suspected of misconduct or other severe offenses, were not subjected to the same level of penalty or adverse action." (Compl. ¶ 43). The Complaint then lists four current or former employees of Defendant, describing each individual by their race, their sex or gender, their alleged misconduct

or charges, and any discipline they received. (*Id.*)[9]

The misconduct charged against the four proposed comparators vary widely, including use of racial slurs, passing an ineligible applicant through the hiring process, DUI, use of force, and assault. (*Id.*) No comparator was accused of misconduct similar to the findings of misconduct sustained against Plaintiff, and the Complaint contains no facts to suggest that anyone "received more favorable treatment" than Plaintiff in this sense. *White*, 375 F.3d at 295. Moreover, in the absence of any detail about the terms of Plaintiff's suspension, none of the disciplinary actions described for any of the comparators proposed in the Complaint are, on their face, more favorable than the suspension Plaintiff received. Indeed, several of the proposed comparators appear to have received *less* favorable treatment than Plaintiff. (Compl. ¶ 43). One proposed comparator, who was charged with "use of force," "received no suspension" but "received a severe letter of reprimand and a loss of 5 days of leave." (Compl. ¶ 43).

In sum, the facts alleged in the Complaint regarding the proposed comparators are insufficient to provide a plausible basis for the proposition that any of the purported comparators both were actually similarly situated to Plaintiff and received more favorable treatment than Plaintiff. The facts in the Complaint are ultimately inadequate to support a reasonable inference that Defendant engaged in unlawful discrimination by taking an adverse employment action against Plaintiff based on his race or sex. Therefore, Plaintiff has failed to state a plausible claim of discrimination under Title VII. Accordingly, Defendant's motion will be granted as to Counts I

---

[9] Plaintiff alleges in Paragraph 52 of the Complaint that "the penalty that was lodged against Plaintiff was disproportionate in comparison to his actual involvement in the incident, particularly when compared to the known penalties and repercussions that similarly situated colleagues outside of his protected class experienced for seemingly more egregious offenses." It is not clear whether "similarly situated colleagues outside of his protected class" refers to the four purported comparators listed in Paragraph 43.

and II, and these counts will be dismissed without prejudice.[10]

### B. Section 1983 Discrimination Claim: Count III

Under 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, subjects the plaintiff "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). Section 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the federal Constitution or laws was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019).

In Count III of the Complaint, Plaintiff alleges that he "has been treated differently and subjected to different terms and conditions of his employment due to his race." (Compl. ¶ 104). While Plaintiff does not specifically allege that the right implicated in his § 1983 claim arises under

---

[10] The Complaint briefly mentions that Plaintiff "continues to work in a hostile work environment" and that "he fears discrimination and retaliation at the hands of Defendant." (Compl. ¶¶ 61, 62). The elements of a hostile work environment claim under Title VII are "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected trait]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (citation omitted). The elements of a retaliation claim under Title VII are that "(1) the plaintiff engaged in a protected activity … (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011) (citation omitted). Plaintiff alleges that he "continues to work in a hostile work environment where he fears discrimination and retaliation at the hands of Defendant." (Compl. ¶ 48). Apart from these general and conclusory statements, Plaintiff does not plead any specific facts to state a plausible claim for either hostile work environment or retaliation under Title VII. Moreover, there are no separate counts identified in the Complaint as Title VII claims for hostile work environment or retaliation. Therefore, to the extent that Plaintiff attempts to state either a hostile work environment claim or retaliation claim under Title VII, this effort falls short of the plausibility standard of *Iqbal*, 556 U.S. at 663, and *Twombly*, 550 U.S. at 570.

42 U.S.C. § 1981, he argues that he "has sufficiently plead [*sic*] a claim under *Monell* and Sections 1981 through 1983." (Pl. Opp'n at 12). Thus, the Court treats Count III as a § 1983 claim based upon an alleged violation of § 1981, which, among other things, "prohibits discrimination in employment on the basis of race." *Yashenko v. Harrah's N.C. Casino Co., LLC*, 446 F.3d 541, 551–52 (4th Cir. 2006); *see also Jett v. Dallas Independent School District*, 491 U.S. 701, 735 (1989) ("We hold that the express 'action at law' provided by § 1983 for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, provides for the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.").

A § 1983 suit by an individual against a state for money damages is barred by state sovereign immunity, embodied in the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 345, 99 (1979). Although BPD is a state entity for purposes of Maryland law, it is a municipal entity for purposes of § 1983 and may be subject to suit under § 1983.[11] *See, e.g., Earl v. Taylor*, CCB-20-1355, 2021 WL 4458930, at *3 (D. Md. Sept. 29, 2021); *Lucero v. Early*, GLR-13-1036, 2019 WL 4673448, at *4 (D. Md. Sept. 25, 2019); *Bumgardner v. Taylor*, RBD-18-1438, 2019 WL 1411059, at *5 (D. Md. Mar. 28, 2019); *Fish v. Mayor and City of Balt.*, CCB-17-1438, 2018 WL 348111, at *3 (D. Md. Jan. 10, 2018); *Chin v. City of Balt.*, 241 F. Supp. 2d 546, 548 (D. Md. 2003); *Alderman v. Balt. Police Dep't*, 952 F. Supp. 256, 258 (D. Md. 1997). This is because BPD is "sufficiently concerned with local matters, independently funded, interconnected with local government, and autonomous from state government. . . ." *Earl*, 2021 WL 4458930, at *3. However, "municipal liability [under § 1983] cannot be premised on respondeat superior or vicarious liability." *Buffington v. Baltimore County*, 913 F.2d 113, 133 (4th Cir. 1990); *see also*

---

[11] BPD is considered a "person" subject to suit under § 1983. *See, e.g., Fish v. Mayor and City of Balt.*, Civ. No. CCB-17-1438, 2018 WL 348111, at *3 (D. Md. Jan. 10, 2018).

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 693–94 (1978). A municipal entity may be liable under § 1983 based on the unconstitutional actions of individuals, but only where those individuals were executing an "official municipal policy" that resulted in a deprivation of the plaintiff's rights. *Id.* at 691. These claims are commonly referred to as *Monell* claims and consist of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's federal rights. *See id.* at 694; *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004).

A plaintiff may demonstrate the existence of an official policy for purposes of a *Monell* claim through: (1) a written ordinance or regulation; (2) certain affirmative decisions of policymaking officials; or (3) certain omissions made by policymaking officials that "manifest deliberate indifference to the rights of citizens." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). Beyond "formal decisionmaking channels, a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Carter*, 164 F.3d at 218 (quoting *Monell*, 436 U.S. at 691); *see also Simms ex rel. Simms v. Hardesty*, 303 F. Supp. 2d 656, 670 (D. Md. 2003). A custom "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987); *see Holloman v. Markowski*, 661 F. App'x 797, 799 (4th Cir. 2016).

In addition, "a policy or custom may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees, or, under quite narrow circumstances, from the manifest propensity of a general, known course of

employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (internal citations omitted). But a policy or custom that gives rise to § 1983 liability cannot "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Id.* at 230. Only when a municipality's conduct demonstrates a "deliberate indifference" to the rights of its inhabitants can the conduct be properly thought of as a "policy or custom" actionable under § 1983. *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "To prove deliberate indifference, a plaintiff must show 'that the [defendant] subjectively recognized a substantial risk of harm and that his actions were inappropriate in light of the risk.'" *Washington v. Hous. Auth. of City of Columbia*, 58 F.4th 170, 179 (4th Cir. 2023) (quoting *Dean ex rel. Harkness v. McKinney*, 976 F.3d 407, 416 (4th Cir. 2020)).

Here, the Complaint does not allege that Plaintiff's federal rights were deprived through any official policy of BPD. The Complaint does refer to a "pervasive culture and custom within BPD of treating African American officers differently than white officers when it came to promotions, disciplinary actions, and conduct." (Compl. ¶ 107). It briefly notes a 2016 report by the U.S. Department of Justice ("DOJ") regarding "[BPD's] widespread constitutional violations, the targeting of African Americans, and a culture of retaliation." (Compl. ¶ 1). However, the Complaint does not contain sufficient facts to place the mistreatment Plaintiff claims he has suffered at BPD in the context of findings made in DOJ's report. The Complaint states in conclusory fashion that "Plaintiff's allegations clearly show a custom of discrimination as required by Section 1983," (Compl. ¶ 108), but offers no facts depicting any such custom. The only individual alleged in the Complaint to have suffered the sort of discriminatory treatment Plaintiff

21

claims he suffered is Plaintiff, and those allegations are inadequate to state a plausible claim of race discrimination or to support a plausible claim that any discriminatory custom at BPD that resulted in any deprivation of Plaintiff's federal rights against race discrimination. In sum, the Complaint falls short of stating a plausible *Monell* claim of race discrimination under § 1983. Defendant's motion will be granted with respect to Count III, and Plaintiff's § 1983 claim will be dismissed without prejudice.

### C. MFEPA Claim: Count IV

MFEPA prohibits discrimination in employment on the basis of race, sex, and other protected classifications. Md. Code Ann., State Gov't, § 20-606(a). This Maryland statute is a state law analogue to federal employment discrimination statutes. *Lowman v. Maryland Aviation Admin.*, Civ. No. JKB-18-1146, 2019 WL 133267, at *4 (D. Md. Jan. 8, 2019). Courts apply Title VII case law to MFEPA claims. *See Haas v. Lockheed Martin Corp.*, 396 Md. 469 (2007); *Linton v. Johns Hopkins Applied Physics Lab*, LLC, Civ. No. JKB-10-276, 2011 WL 4549177 at *5, n.3 (D. Md. Sept. 28, 2011).

A plaintiff may state a claim for harassment or hostile work environment by alleging that "the offending conduct (1) was unwelcome, (2) was based on her [race or] sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 412 (D. Md. 2015) (quoting *Ocheltree v. Scollon Prods., Inc.,* 335 F.3d 325, 331 (4th Cir. 2003). The "severe or pervasive" requirement has both subjective and objective components. *See Harris v. Forklift Sys.*, *Inc.*, 510 U.S. 17, 21–22 (1993); *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207–08 (4th Cir. 2019). "[W]hen determining whether the harassing conduct was objectively severe or pervasive," a court considers "all the circumstances, including the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 208 (quoting *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, . . . are not actionable under Title VII." *Sunbelt Rentals*, 521 F.3d at 315–16 (internal quotation marks and citations omitted).

In Count IV of the Complaint, Plaintiff alleges that he "was subjected to harassment or offensive conduct" based on his race "when the investigators continued to make false allegations against him that ultimately resulted in seemingly unwarranted and disparate charges, despite his cooperation with the investigation process." (Compl. ¶ 116). Plaintiff fails to allege that the "false allegations" he claims IA investigators made against him were sufficiently severe or pervasive to support a claim of harassment under MFEPA.

Plaintiff further alleges that "the penalty that was lodged against [him] was disproportionate in comparison to his actual involvement in the incident, particularly when compared to the known penalties and repercussions that similarly situated colleagues outside of his protected class experienced for seemingly more egregious offenses." (*Id.*) Plaintiff's allegations are inadequate to state a plausible claim of harassment under MFEPA. The lodging of this alleged "penalty" was a singular event. that, in the circumstances described in the Complaint, do not rise to the level of creating an abusive work environment. If by "penalty" Plaintiff is

referring to his suspension, Plaintiff offers no facts to demonstrate how a suspension *from* work could have contributed to an abusive work environment.

Count IV fails to state a plausible claim of discriminatory harassment under MFEPA. Moreover, as explained in Part III.A.3 *supra*, Plaintiff fails to allege sufficient facts to support an inference that any conduct he endured at BPD was on account of his race or sex. Therefore, Defendant's motion will be granted as to Count IV, and Plaintiff's MFEPA claim will be dismissed without prejudice.[12]

## IV.     **Conclusion**

In summary, the Complaint does not include sufficient factual allegations to support any claim of discrimination under Title VII, 42 U.S.C. § 1983, or MFEPA. Moreover, Plaintiff's Title VII claims, as alleged in the Complaint, are time barred. Therefore, Defendant's Motion to Dismiss will be granted, and the Complaint will be dismissed without prejudice.

A separate Order follows.

__September 29, 2023____                   _____/S/_____
Date                                                      Matthew J. Maddox
                                                              United States Magistrate Judge

---

[12] Defendant argues that (1) Plaintiff "failed to provide the required notice under the [Local Government Tort Claims Act ("LGTCA")], and (2) as a state agency, BPD is entitled to sovereign immunity from suit under MFEPA. (Def. Mem. at 15–17). Because the Court dismisses Plaintiff's MFEPA claim based on the insufficiency of the pleading, the Court need not address the issues Defendant raises regarding LGTCA notice and sovereign immunity.